OVERTON and others, Respondents, vs. BEMIS-HOOPER-HAYS COMPANY, Appellant.
SAME, Appellants, vs. SAME, Respondent.

*December 7, 1922—January 9, 1923.*

*Sales: Warranty as to quality: Breach: Rescission of contract: Delay in giving notice of defects: Reasonable time.*

1. An agreement made in June, 1919, for the sale of cheese, deliveries of which were made from August until the following June, was not rescinded by a letter dated August 5, 1920, or by a formal offer of rescission on December 28, 1920, the buyer not having notified the sellers of its intended election to rescind within a reasonable time as required by sub. 3, sec. 1684*t*—69, Stats. 1919.

2. Irrespective of whether under the evidence the view of the referee that there was no express warranty as to the cheese, or that of the trial court on this question, should be

upheld, the defendant cannot recover on its counterclaim, even conceding an express warranty, because of delay for an unreasonable time to give notice to the plaintiffs after it knew or ought to have known of the breach by them of the conditions of the sale.

3. There being a continuing duty on the part of the defendant not to sell or offer for sale cheese with a moisture content in excess of forty per cent. and to ascertain at its peril whether the cheese it was holding for sale was in compliance with the statute, which fact was not ascertained until December 20, 1920, although defendant had had complaints from its customers early in 1920, and the particular deliveries for which the plaintiffs brought action to recover the purchase price not appearing to have been in violation of the statute, the defendant must be deemed, as a matter of law, to have delayed an unreasonable time in ascertaining the fact of possible excess of moisture.

APPEALS from a judgment of the circuit court for Winnebago county: CHESTER A. FOWLER, Judge. *Reversed.*

In June, 1919, the plaintiffs, who were associated as cheese producers, made an oral agreement through their selling agent with the defendant, a wholesale dealer in cheese at Oshkosh, for the plaintiffs' entire output of both American and brick cheese. The agreement was substantially to the effect that the plaintiffs were to make and deliver a firmer cheese than that which they had been producing prior to that time and also selling to defendant. In consideration for the agreement to produce such firmer cheese the defendant was to pay one-half cent per pound over the generally established market price for cheese in the market centers of that part of Wisconsin. Deliveries were commenced in August and continued until the following June, during which period over 78,000 pounds of American cheese was delivered to defendant. Upon receiving the various deliveries of the American cheese the defendant kept it for some days in its warehouse and then it underwent a process of being dipped in paraffine for preservation purposes and was then stored in the cheese warehouse for future sale.

On June 7, 1920, defendant wrote plaintiffs as follows:

"Do not send us any more cheese of any kind until further notice.

"Something is the matter with some of the cheese which you have sent us. We are investigating the matter and will report to you later when we find out more definitely. In the meantime, you should dispose of your cheese elsewhere."

And again on July 19th as follows:

"It seems useless for us to try to work off the bad brick cheese which you made for us last fall and winter. In fact nearly every lot we send out comes back.

"You had better make arrangements to take what we have off our hands and give us credit for it.

"We have not yet heard from the State Dairy and Food Commission, who took samples of brick and the twins.

"If you had made this cheese according to contract, we should have had no trouble whatever in disposing of it."

And again on August 5th as follows:

"We fear that the cheese which you furnished us, which is not according to contract, is liable to be a total loss. And as we have told you before, we would like to have you take it off our hands.

"If you do not do this, and want to talk an adjustment of the matter, we would like to hear from you what you propose."

The plaintiffs made no written response to either of these communications.

The deliveries of cheese were paid for by defendant during the month succeeding except for the deliveries made during May and June, and it was conceded that there was due plaintiffs for such the agreed price of $3,260.77, with interest, and for which this action was commenced by summons and complaint on August 20, 1920. Defendant asserted by way of defense and counterclaim that there was a breach of the contract by the plaintiffs in that they failed to furnish the firmer grade or quality of American

cheese per contract and that by reason thereof that cheese deteriorated in value much more than if made according to the warranty, and that much of it became subject to rind rot, and that the defendant was forced to take back much that it had sold to its customers at great expense, and that its reputation as a dealer in high-grade cheese was seriously damaged by reason of its having disposed of such inferior quality of cheese, and that it was caused other expenses.

It also alleged in further counterclaim and defense a breach of the contract so far as the brick cheese was concerned, but that was withdrawn by defendant upon the trial and receives no further attention. The cause was referred to a referee, whose findings of fact, so far as material, were to the effect that there was no express warranty by the parties as to the quality of cheese, but that there was an implied warranty that it would be wholesome food; that some of the American cheese contained a moisture content above forty per cent., the then maximum fixed by statute for such cheese; that defendant made no tests of the cheese in regard to such moisture content until long after its delivery; that defendant, after having received notice by complaints from its customers of possible defect in such cheese, had sufficient notice to put it upon inquiry as early as March 1, 1920, and its delay thereafter made no proper basis for rescinding the contract and none for any breach of warranty; that no offer to rescind or to tender back the cheese still in defendant's possession was made until December 28, 1920; that plaintiffs were entitled to recover the agreed purchase price of $3,260.77, and that the defendant's counterclaims should be dismissed.

Upon defendant's application the circuit court modified to some extent the findings of the referee by finding that there was an express rather than an implied warranty by the plaintiffs that the cheese would be firmer, that is, contain less moisture content, than the cheese formerly made by plaintiffs; that the defendant purchased such cheese to

be.kept for sale to customers as old cheese rather than for immediate· sale; that after delivery and . payment for the cheese delivered prior to May, 1920, rind rot was caused in some of such cheese by reason of an excess of moisture in the cheese at the time of sale, and that none of such American cheese was firmer or with less moisture content than that of the prior making; that no tests for moisture were made by defendant within the six months after the respective deliveries; that defendant had sufficient notice by June 7th as to the condition of the American cheese.

The court further found that with reasonable diligence the defendant· could have sold the American cheese after notice of its faulty condition at a price that would have been four and one-fourth cents per pound less than that which it could have sold for if complying with the warranty, and for such difference on a certain amount of the cheese undisposed of by defendant and which made the sum of $1,165.98, the court allowed defendant as damages. The court also assessed as damages to defendant's reputation by reason of its having relied upon said warranty in the sale of the imperfect cheese the sum of $25, and for. such amounts the defendant was allowed credit on its counterclaim as against the conceded amount due the plaintiffs, and for the balance judgment was awarded plaintiffs.

Cross-appeals were taken from the judgment of the circuit court so modifying the referee's findings.

*D. K. Allen* of Oshkosh, for the plaintiffs.

*Moses Hooper* of Oshkosh, for the defendant.

ESCHWEILER, J.   The trial court in reviewing the findings of the referee agreed with the latter's conclusion that under the facts in this case there was no valid rescission by defendant, whether based upon the letter of August 5th quoted above or upon the formal offer of December 28, 1920, because of failure on defendant's part to notify the plaintiffs within a reasonable time of such intended election

to rescind. Sub. 3, sec. 1684*t*—69, Stats. We agree with such disposition of this case upon that point.

The referee, having reached the conclusion upon the evidence that there was no express warranty, came to the conclusion that there could be no recovery by defendant upon its counterclaim for any claimed breach of warranty. The trial court, however, construed the evidence as requiring a determination that there was an express warranty by the plaintiffs that the cheese to be furnished under this contract was to be firmer, that is, of less moisture content, than that theretofore manufactured by plaintiffs and sold to the defendant, and that because of what was deemed by the trial court a substantial failure on the part of the plaintiffs to meet with the conditions of such warranty the defendant was entitled to damages.

We deem it unnecessary to determine whether the view taken by the referee or that of the trial court on this question of warranty should be upheld. For conceding that there was an express warranty as to the moisture content of the cheese, yet we think the defendant is barred from any right to recover upon its counterclaim because of delay for an unreasonable time by the defendant to give plaintiffs notice after it knew and ought to have known of any breach by the plaintiffs of the conditions of the sale. Sec. 1684*t*—49, Stats.

It is conceded and appears from the testimony on behalf of defendant that at all times from August, 1919, to June, 1920, while the American cheese was being received by defendant, there was no one in connection with its business who knew much about cheese so far as being able to determine by inspection or any form of simple tests whether or not such cheese was or was not in compliance with the statutory standard or the contract between the parties. It also appears from the same source that no test was made in any way of this cheese as it was received, or at and prior

to the sales that were made from time to time by defendant, although its former custom of many years as to caring for and storing such cheese was followed. Defendant did have complaints early in 1920 from customers as to the quality of this cheese and of a nature that necessarily brought home to it knowledge of the possibility at least of the existence of the defect, if any such existed, upon which defendant now relies in its claim for damages. It took no steps to have such test made in any satisfactory form until December 20th and after the commencement of this suit in August, 1920. Then a simple test by one engaged in the wholesale cheese business disclosed the fact that certain samples of cheese taken from defendant's warehouse December 17, 1920, and some of which had been received by defendant in August and December, 1919, and in the months of January to May, 1920, had an excess of moisture at the time of the test, and undoubtedly, from other evidence in the case, still more of an excess at the time of its sale by plaintiffs.

We have no way of telling from the record how much was of the brick or of the American cheese of the May and June deliveries for which plaintiffs brought this action and for the agreed purchase price of which it was conceded and found by the referee and trial court it was entitled to recover, the counterclaim as to the brick cheese having been abandoned on the trial. The tests relied upon by defendant and by the trial court as reported to defendant on December 21, 1920, showed that two deliveries in May, 1920, each tested .394, that is, within the statutory maximum of moisture content of .40, and no test appears to have been made of any cheese delivered in June. So far, therefore, as the deliveries of cheese are concerned for which plaintiffs seek to recover, there is no evidence in the record that such particular shipments were a breach of the contract or contrary to the statute.

During all the times of the contract between the parties, under the law of this state by sub. (9), sec. 4601—4a, Stats. 1919, such American cheese was not to have more than forty per cent. of moisture. And at this time sec 4601—7, Stats. (created by ch. 301, Laws 1919), provided a penalty for any firm or corporation or individual who, by servants or agents, should manufacture for sale, sell, or offer for sale, or have in possession with intent to sell, any cheese which contains more than the amount of moisture permitted under the section above quoted. That the defendant did not know at the time it was offering such cheese for sale that it was in violation of the statutory condition, would have been no defense to defendant in any prosecution under such statutes. *Scott v. State,* 171 Wis. 487, 177 N. W. 615. Therefore it became the imperative duty of the defendant to ascertain, at its peril, whether or not the cheese it was so holding with intent to sell the same was in compliance with the statute. That duty was pressing and present all the time that the defendant was receiving the cheese from the plaintiffs and while holding it in its warehouse subject to sale. Defendant did not ascertain the fact of any possible excess of moisture content in this cheese until, as to some of it, more than a year had elapsed since it had been received and long after it had been paid for and long after it had disposed of some of it to its customers in violation of the statute, if it was made contrary to statute. Whether the plaintiffs could have recovered the agreed purchase price of cheese sold by them to defendant in violation of such penal statute, or whether the law would have left the parties to such a transaction as it found them, is not now material here, for in the instant case there is no showing made that the particular deliveries of cheese for which recovery is sought by plaintiffs were in violation of the statute. It does appear, however, that the defendant is seeking to recover damages on its counterclaim because of its sales made or rendered impossible to be made to its own

customers of cheese claimed or shown to have been in viola-
tion of the statute. For, if violated by the plaintiffs in the
making for sale, it was also necessarily violated by defend-
ant itself in its sales made or frustrated. It is an undisputed
fact that it did not comply with its duty and ascertain the
fact as to its moisture content until long after the receipt of
the cheese and for a period that must be deemed, as a matter
of law, an unreasonable time after it knew and ought to
have known that there was such defect, and for that reason
the counterclaim of defendant must be dismissed.

By the Court.—Judgment reversed, and cause remanded
with directions to grant judgment in favor of the plaintiffs
for the amount claimed and for a dismissal of defendant's
counterclaims.